## THE JACK–O–LANTERN.

(District Court, D. Massachusetts. July 2, 1920.)

No. 1821.

**Maritime liens ☞10—Contract for reconstruction not creating lien.**

   A contract for converting a car float, having neither motive power nor steering gear, into an amusement steamer, with dance hall, rooms, and power equipment, *held* one for reconstruction, completely changing the identity of the vessel, which did not create a maritime lien.

In Admiralty. Suit by the New Bedford Dry Dock Company against the Steamer Jack-O-Lantern. On objection to jurisdiction. Objection sustained, and libel dismissed.

George R. Farnum, of Boston, Mass., for libelant.
George L. Dillaway, of Boston, Mass., for claimant.

MORTON, District Judge. This case was heard on so much of the answer as sets up lack of jurisdiction, for the reason, as alleged, that the contract sued upon was not of such character as to create a maritime lien. The facts, which are simple, were orally agreed on by counsel in open court at the hearing, and are as follows:

The Jack-O-Lantern was originally a car float of the usual type, something over 200 feet long, with neither motive power nor steering gear, and having two lines of track on her single deck. The claimant bought her and proceeded to convert her into a steamer to be used for amusement purposes. The tracks were removed, the deck relaid to make a dancing floor, a large house, or superstructure, was built, inclosing most of the deck, and containing a dance hall, rooms, balconies, etc. Steering apparatus and a steam plant of the propeller type, for propulsion, were also installed.

For the purpose of carrying out these changes the contract now before the court was made between the claimant and the libelant. It covers, generally speaking, all the woodwork involved in the changes above outlined. The libelant did not install the power plant, but it did prepare the vessel for it. The scow was towed to the libelant's yard for the work to be done. The engine and boilers were there installed. As they were not yet in working condition when the vessel left the libelant's yard, she was towed away. The contract and specifications are as stated in the pleadings.

The present question is whether, upon the foregoing undisputed facts, the contract was one for repairs and supplies, such as creates a maritime lien. It is too late now to question, in a court of first instance, at least, the rule that a contract to construct a vessel does not give rise to such a lien. In rebuilding operations the test is whether the identity of the vessel has continued, or has been extinguished. It would serve no useful purpose for me to discuss the cases referred to in argument by the libelant. The matter turns, as I view it, upon a question of fact; and upon the facts stated I think it clear that the

---

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

identity of the car float which was delivered to the libelant was completely lost by the conversion into an amusement steamer under the contract in suit. It is true that the hull is substantially unchanged; but mere identity of hull is not sufficient to preserve the identity of the vessel. McMaster v. One Dredge (D. C.) 95 Fed. 832; The Dredge A. (D. C.) 217 Fed. 617, 629, 630. The Jack-O-Lantern, with her dance hall, rooms, and power plant, self-propelled and able to maneuver, is an essentially different vessel from the car float, which furnished the hull.

Decree dismissing libel for lack of jurisdiction.